FILED

07/01/2026

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 16, 2026

**STATE OF TENNESSEE v. THOMAS LYMN**

**Appeal from the Circuit Court for Moore County
No. 24-CR-1625  Forest A. Durard, Jr., Judge**

———————————————————

**No. M2025-00787-CCA-R3-CD**

———————————————————

Defendant, Thomas Lymn, appeals his Moore County Circuit Court jury conviction of theft of property valued at $2,500 or more but less than $10,000, arguing that the evidence was insufficient to support his conviction. Upon our review, we conclude that the evidence was sufficient and, therefore, affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Donna O. Hargrove, District Public Defender; Jefre S. Goldtrap and Doug Neeley, Assistant District Public Defenders, for the appellant, Thomas Lymn, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Leslie R. Byrd, Assistant Attorney General; Robert J. Carter, District Attorney General; and Holly Hewgley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This appeal arises from Defendant's borrowing but failing to return a truck belonging to the victim, Richard Womble.

## Factual and Procedural Background

A Moore County grand jury charged Defendant with a single count of the theft of property valued at $2,500 or more but less than $10,000, and the case proceeded to trial on November 25, 2024.

At trial, Mr. Womble testified that sometime in early August 2023, Defendant asked to borrow Mr. Womble's 2004 Chevrolet truck to take his dog to the veterinarian. Because Defendant had previously performed odd jobs for the elderly Mr. Womble, who believed Defendant to be "a pretty good fellow" and agreed to lend him the truck. When Defendant had not returned the truck after a week, Mr. Womble contacted his neighbor, with whom Defendant had been staying when he did odd jobs for Mr. Womble and when he borrowed the truck. The neighbor gave Mr. Womble a phone number for Defendant, but Defendant did not answer any of his calls or respond to any of the text messages that he sent.

When Defendant had still not returned the truck on August 24, 2023, Mr. Womble reported the truck stolen to the sheriff's office and to his insurance company. The insurance company paid Mr. Womble $4,300, which was $4,800 less the $500 deductible. At some point, the truck was recovered in Warren County, but it was not returned to Mr. Womble.

Mr. Womble agreed that he did not place a time limit on Defendant's borrowing the truck but said that he did not expect Defendant to keep the truck more than a day or two given his stated reason for borrowing the truck was to take his dog to the veterinarian. He said that he did not tell Defendant that he could keep the truck for an extended period.

Moore County Sheriff's Office Deputy Keith Cencelewski testified that he took the report of the theft from Mr. Womble and that he placed the information into the local system, which "put it into a national system to report the truck stolen." Sometime later, Deputy Cencelewski learned that the truck had been located at a residence in McMinnville and that it had been recovered by members of the Warren County Sheriff's Office.

Warren County Sheriff's Office Investigator Spencer Pryor testified that he received a call from the Coffee County Sheriff's Office alerting him that Defendant was in the company of Shala Lawrence, who had active warrants in Coffee County. Coffee County authorities told Investigator Pryor that Defendant and Ms. Lawrence were in a red 2004 Chevrolet truck and that they could likely be found at the home of Ms. Lawrence's grandfather in Warren County. On September 22, 2023, officers went to the residence and learned that Defendant and Ms. Lawrence had been there, that they were in a red Chevrolet truck, and that they could be found at a different property on Sunset Point Road. Investigator Pryor went to the Sunset Point Road property, where he encountered Defendant and Ms. Lawrence in a camper. Mr. Womble's truck was parked behind the

camper. Defendant was placed under arrest. Defendant gave the keys to the truck to Investigator Pryor, who had the truck towed and did not attempt to start the vehicle.

Defendant testified on his own behalf. He said that he borrowed Mr. Womble's truck "to take my dog to the vet and save her life." He said that although Mr. Womble did not place a time limit on his possession of the truck, he did not intend to keep the truck for an extended period. Instead, he claimed that after he took his dog "to five different vets around the area," he went home to find that his house was "getting robbed by a bunch of people." At that point, Defendant drove the truck to the home of his girlfriend's father in McMinnville. He said that he intended to return the truck, but the "alternator went out," and he could not pay to have the truck repaired or contact Mr. Womble because the people who robbed his house stole both his phone and his wallet. According to Defendant, he walked to a gas station and attempted to find a number for either Mr. Womble or one of his family members "in the yellow pages," but he was unsuccessful. He said that he even wrote a letter to Mr. Womble's "nephew" who was "in jail."

Defendant insisted that he did not drive the truck to the location where it was found but that he and his girlfriend "pushed it to [her] grandfather's house and he pulled it with his car." Defendant claimed that he took the alternator out and "was trying to rebuild it but I didn't have no tools or nothing." He said that at one point, he asked his girlfriend's father "to bring the truck back on a flat bed but he had cancer and he was passing so it didn't work."

During cross-examination, Defendant was unable to name any of the five veterinarians that he had visited despite that this task took him the entire day. Defendant said that when he returned from visiting veterinarians, there were eight people "with baseball bats" in the process of burglarizing his house and that the people came and took his phone and wallet from above the visor in the truck. He claimed that his girlfriend "called the police twice to my house" while he "barricaded" himself and his "girlfriend and dog in one room until the police came." Defendant said that the robbers left when the police came but returned after the police left and "just started back in with their robbing and threatening to kill me and stuff." Defendant said that he tried to go to Mr. Womble's house after the robbers left to "let him know that I was going to take a truckload of my stuff to McMinnville" but that Mr. Womble, who "goes to sleep pretty early," did not answer the door when Defendant knocked at 9:00 p.m.

Based upon this evidence, the jury convicted Defendant as charged, and, following a sentencing hearing, the trial court imposed a Range I sentence of four years to be served as eleven months and twenty-nine days incarceration followed by probation. Defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal.

**Analysis**

In this appeal, Defendant asserts that the evidence was insufficient to support his conviction. Defendant's sole theory is that his "unrebutted testimony was that he never intended to permanently deprive the owner of the property." The State contends that the evidence was sufficient. We agree with the State.

We review a defendant's challenge to the sufficiency of the convicting evidence to determine whether, "after viewing the evidence in the light most favorable to the prosecution" and providing the State with "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom," "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citations omitted); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citations omitted); Tenn. R. App. P. 13. Our review "is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both." *State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018) (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)). Importantly, a guilty verdict removes the presumption of innocence and replaces it with one of guilt on appeal, shifting the burden to the defendant to demonstrate why the evidence is legally insufficient to support the conviction. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

We will not revisit witness credibility or any purported discrepancies in the evidence because the jury, not this court, resolves all questions involving the credibility of the witnesses, the weight and value to be given to evidence, and the factual disputes raised by such evidence. *See Dorantes*, 331 S.W.3d at 379 (citing *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). Accordingly, this court will neither re-weigh nor reconsider the evidence when evaluating the sufficiency of the convicting proof. *State v. Stephens*, 521 S.W.3d 718, 724 (Tenn. 2017).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). As relevant here, "'deprive' means to withhold property from the owner permanently or for such a period of time to substantially diminish the value or enjoyment of the property of the owner." *Id*. § 39-11-106(a)(9)(A). "'The intent to deprive may be based solely upon circumstantial evidence, and a 'jury may infer . . . a defendant's intent from the surrounding facts and circumstances." *State v. Poe*, No. W2025-01143-CCA-R3-CD, 2026 WL 1493656, at *4 (Tenn. Crim. App. May 5, 2026) (quoting *State v. Smith*, W2023-00482-CCA-R3-CD, 2024 WL 863301, at *6 (Tenn. Crim. App. Feb. 29, 2024)). Theft of property valued at $2,500 or more but less than $10,000 is a Class D felony. Tenn. Code Ann. § 39-14-105(a)(3).

Defendant essentially contends that the jury could not have concluded that he intended to permanently deprive Mr. Womble of his truck because Defendant said so. However, the jury, not this court, determines which witnesses to believe and the weight to be assigned to their testimony. *See* Tenn. Const. art. I, § 19 ("[T]he jury shall have a right to determine the law and the facts[.]"). The jury, not this court, decides which inferences to draw from the evidence. Here, evidence established that Defendant asked to borrow Mr. Womble's truck for the limited purpose of taking his dog to the veterinarian and never returned it. Defendant did not contact Mr. Womble at all in the seven weeks between his taking the truck and the discovery of the truck at the camper where he was living with his girlfriend, and his excuses for not doing so bordered on the fantastic. The jury, as was its prerogative, chose not to accredit Defendant's testimony and infer Defendant's intent from the surrounding facts. We will not disturb the jury's decision, and we conclude the evidence presented was sufficient to support Defendant's conviction.

## Conclusion

Based upon the foregoing, the judgment of the trial court is affirmed.


_____ s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE